Bob **BULLOCK, Comptroller of Public Accounts of the State of Texas et al., Petitioner,**

v.

**NATIONAL BANCSHARES CORPORATION of Texas et al., Respondent.**

No. B–7896.

Supreme Court of Texas.

June 20, 1979.

Rehearing Denied July 25, 1979.

Mark White, Atty. Gen., Gilbert J. Bernal, Jr., and Martha E. Smiley, Asst. Attys. Gen., Austin, for petitioner.

Fulbright & Jaworski, C. W. Wellen, Thomas J. Brorby, R. Richard Coston, Alan E. Sherman, Vinson & Elkins, Marvin K. Collie, Harry M. Reasoner, Thomas P. Marinis, Jr., Ann Lents, Liddell, Sapp, Zivley & Brown, W. Robert Brown, Willis Witt, Houston, for respondent.

McGEE, Justice.

This is a suit by certain taxpayers against the comptroller of public accounts to recover in excess of $2,000,000.00 in franchise taxes paid under protest.[1] The trial court denied relief, but the court of civil appeals reversed the lower court judgment, rendering judgment that the taxpayers recover all sums paid. 569 S.W.2d 584. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The basic facts of this case are undisputed and may be briefly summarized. Tax-

---

**1.** The plaintiffs and respondents in this suit are National Bancshares Corp. of Texas, Cullen/Frost Bankers, Inc., Southwest Bancshares, Inc., Texas American Bancshares, Inc., on its own behalf and as successor in interest to Southern National Corp., First City Bancorporation of Texas, Inc., First United Bancorporation, Inc., Mercantile Texas Corporation, as successor in interest to Federal Capital Corporation, Fort Sam Houston Bankshares, Inc. (by intervention), and Reidy International, Inc. (by intervention).

payers are eight national bank holding companies, which have derived income from national bank shares, and one ordinary business corporation, which has derived income from a national bank certificate of deposit. In April of 1974 the comptroller of public accounts issued a ruling which provided that dividends and interest paid on or after January 1, 1973 by a national bank located in this state are includable in the corporate payee's gross receipts for the purpose of assessing a franchise tax. The taxpayers paid the franchise tax under protest and subsequently brought this suit to recover sums paid.

The central issue presented is whether the comptroller correctly ruled that interest and dividends derived from national banks located in this state are includable in the corporate payee's Texas gross receipts for the purpose of assessing a franchise tax. The taxpayers contend, and the court of civil appeals has held, that an act of the Texas legislature, 1971 Tex.Gen.Laws, ch. 292, art. 7 § 1, at 1206, codified as a footnote in Tex.Tax.–Gen.Ann. art. 20.02 (Vernon Supp.1978–1979) (hereinafter article 7, section 1), precludes such inclusion. We cannot agree. It is our opinion that the legislature merely intended to preclude the additional taxation of banks and did not intend to preclude a franchise tax upon other, unmentioned corporate entities.

■ Unless otherwise provided by law, a franchise tax is imposed upon all domestic and foreign corporations doing business in Texas. *See* Tex.Tax.–Gen.Ann. arts. 12.01 to 12.22 (Vernon 1969 & Supp.1978–1979). The granting of the privilege to transact business in this state confers economic benefits, including the opportunity to realize gross income and the right to invoke the protection of local law. The Texas franchise tax is a tax on the value of this privilege. *General Dynamics Corp. v. Bullock,* 547 S.W.2d 255, 257-58 (Tex.1976);

*Texaco, Inc. v. Calvert,* 526 S.W.2d 630, 633 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.); *see Ford Motor Co. v. Beauchamp,* 308 U.S. 331, 334–35, 60 S.Ct. 273, 84 L.Ed. 304 (1939) (holding Texas franchise tax constitutional).

The formula employed to compute a corporation's franchise tax is designed to achieve a tax commensurate with the value of the privilege granted. *General Dynamics Corp. v. Bullock, supra* at 257; *United North & South Development Co. v. Heath,* 78 S.W.2d 650, 652 (Tex.Civ.App.—Austin 1934, writ ref'd). This is accomplished by dividing the gross receipts from business done in Texas by the gross receipts from the entire business. The resulting allocation percentage is multiplied by the total taxable capital and, in turn, the product of this calculation (capital taxable by Texas) is miltiplied by the current tax rate. The final product of this calculation is the sum of the corporation's franchise tax liability from business done in Texas.[2] Tex.Tax.–Gen.Ann. arts 12.01 & 12.02 (Vernon 1969 & Supp.1978–1979); *see Humble Oil & Refining Co. v. Calvert,* 414 S.W.2d 172, 173 n. 1 (Tex.1967); *Texaco, Inc. v. Calvert, supra* at 632; Note, 5 Hous.L.Rev. 132, 133 (1967).

■ To determine what receipts from intangibles should be allocated to business done in this state, Texas employs the location of payor test. *Humble Oil & Refining Co. v. Calvert, supra* at 175. Under this test, the domicile of the debtor or payor in the case of interest or dividends is dispositive and not the domicile of the taxpaying corporate payee. If dividends or interest are received from a Texas corporation, they are Texas receipts. Conversely, if received from a foreign corporation, they are not Texas receipts. *Id.* at 175; Note, 5 Hous.L. Rev. 134 (1967).

Historically, the comptroller did not include dividends or interest income received

**2.**

$$\frac{\text{GROSS RECEIPTS IN TEXAS}}{\text{GROSS RECEIPTS OF ENTIRE BUSINESS}} = \text{ALLOCATION PERCENTAGE} \times \text{ENTIRE TAXABLE CAPITAL} = \text{CAPITAL TAXABLE BY TEXAS} \times \text{TAX RATE} = \text{FRANCHISE TAX}$$

from a national bank located in Texas in the corporate payee's Texas gross receipts. *See Silco, Inc. v. Calvert,* 482 S.W.2d 56, 59 (Tex.Civ.App.—Austin 1972, writ ref'd n.r. e.). This was because national banks, as opposed to state-chartered banks, were considered foreign corporations. Thus, under the location of payor test, income received from state-chartered banks was includable in Texas gross receipts, but income received from national banks was not equally includable. *Id.* at 58–59.

In April of 1974 the comptroller issued ruling 80-0.18 which is set forth in full in the margin.[3] This ruling essentially provides that effective January 1, 1973 income received from national banks located in Texas is taxable on the same basis as income received from state-chartered banks. The comptroller based this change in taxation policy on Pub.L. 91–156, 83 Stat. 434 (codified at 12 U.S.C. § 548 (Supp.1979)) (hereinafter Pub.L. 91–156), which became effective January 1, 1973.[4] That congressional enactment provided that for the purposes of any state tax law a national bank shall be treated as a bank organized and existing under the laws of the state within which its principal office is located. Applying the location of payor test, the comptroller concluded that dividends and interest received from national banks located in Texas constituted Texas gross receipts in the hands of the corporate payee.

The taxpayers in this case contend that the comptroller is precluded by an act of the Texas legislature from including income received from national banks located in this state in their Texas gross receipts. Article 7, section 1 provides:

The passage of Public Law 91–156 by the Congress of the United States shall not operate to impose or permit the imposition of any additional tax or taxes upon the *institutions affected thereby* unless:

(a) The tax or taxes were being imposed prior to January 1, 1971, or

(b) Such institutions are specifically designated as being subject to such additional tax or taxes other than the limited sales and use tax by an Act of the Legislature passed subsequent to the effective date of Public Law 91–156.

*Id.* (Emphasis added). The taxpayers reason that corporate payees of national bank dividends and interest—specifically, national bank holding companies and corporate holders of national bank certificates of deposit—are "institutions affected" by Pub.L. 91–156.

 Before we undertake á determination of what institutions are affected by Pub.L. 91–156 within the meaning of article 7, section 1, we note that the present taxpayers' contention is tantamount to a claim for exemption from the franchise tax. Statutory exemptions from taxation are

---

**3.** "General: The 'location of payor' test is used in determining whether dividends and interest are attributable as receipts from business done in Texas under Article 12.-02(1)(b). In accordance therewith, dividends and interest paid by a domestic corporation are includable in gross receipts from business done in Texas, whereas dividends and interest paid by a foreign corporation do not constitute Texas gross receipts under the statute.

"State Banks: Dividends and interest paid by a bank organized under the Banking Code of Texas are includable in gross receipts from business done in Texas pursuant to Article 12.02(1)(b).

"National Banks: Prior to January 1, 1973, national banks were considered to be foreign corporations for franchise tax purposes and, consequently, dividends and interest paid by a national bank located in Texas were not attributable as Texas gross receipts. Public Law 9.1–156, amended Section 5219 of the Revised Statutes to provide, effective January 1, 1973, that for the purposes of any tax law enacted under the authority of any state a national bank shall be treated as a bank organized and existing under the laws of the state within which its principal office is located. Accordingly, dividends and interest paid on and after January 1, 1973 by a national bank whose principal office is located within Texas are includable in gross receipts from business done in Texas pursuant to Article 12.02(1)(b)."

**4.** Pub.L. 91–156 provides:

For the purpose of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located.

*Id.*

subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. *Hilltop Village, Inc. v. Kerrville Independent School District,* 426 S.W.2d 943, 948 (Tex.1968); *accord, Air Force Village Foundation v. Northside Independent School District,* 561 S.W.2d 905, 909 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of taxing authority and against the claimant. Simply stated, the burden of proof is on the claimant to clearly show that it comes within the statutory exemption. *Aransas Hospital, Inc. v. Aransas Pass Independent School District,* 521 S.W.2d 685, 689 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Space Precision Machining Co. v. State,* 503 S.W.2d 289, 291 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.).[5]

We now turn to an examination of article 7, section 1. This statute states that there shall be no additional taxation of "institutions affected" by Pub.L. 91-156. Since an exemption from taxation must affirmatively appear and since there is no affirmative indication in article 7, section 1 of what corporations the term "institutions" was intended to encompass, we must refer to Pub.L. 91–156. The only "institutions" mentioned or referred to in that statute are "banks."

▮ Although we adhere to the strict construction rules aforementioned, an examination of the history of Pub.L. 91–156 is helpful to an understanding of its intended effect. Behind the passage of this statute is the long-settled rule that the several states cannot tax national banks except as permitted by Congress. This limitation on the states' taxation power is founded on the theory that national banks are chartered by the United States government and that the federal power is supreme over its instrumentalities. *First Agricultural National Bank v. State Tax Commission,* 392 U.S. 339, 340, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); *see* Mitchie on Banks and Banking 348–49 n. 6 (1971). Historically, this meant that state-chartered banks were subject to some types of state taxation that national banks were exempt from. A good example of this disparity in tax treatment is provided by *Grayson County State Bank v. Calvert,* 357 S.W.2d 160 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). In that case it was held that a state franchise tax could constitutionally be levied against a state·bank although the same tax could not be levied against a national bank located in this state. The court reasoned that national and state banks were not within the same class; rather, a national bank could transact business within state boundaries without the state's permission and without paying for the privilege. *Id.* at 162. A concurring justice noted this "inequitable condition" and called upon the Texas legislature to rectify the tax disadvantages under which state banks were forced to compete with national banks. *Id.* at 163. One year later the Texas legislature responded with an amendment to article 342-908 of the Texas Revised Civil Statutes. That article presently provides that state-chartered banks are subject only to such taxes that lawfully can be imposed by Texas on national banks located in the state.[6] In ef-

**5.** Professor Sands summarizes the rule thusly:
As a general rule, grants of tax exemptions are given a strict interpretation against the assertions of the taxpayer and in favor of the taxing power. As explained in court opinions: "Exemptions from taxation claimed under *legislative acts should be rigidly* construed and established beyond a reasonable doubt. It is only where a deliberate purpose of the legislature to grant an exemption is expressed in clear and unequivocal terms that a claim to an exemption can be maintained." "Taxation is the rule and exemption

therefrom the exception; and the claimant of such an exemption must show his right thereto by evidence which leaves the question free from doubt. The claimant for an exemption must show that his demand is within the letter as well as the spirit of the law."

3 C. Sands, Statutes and Statutory Construction § 66.09, at 207 (1972 & Supp.1979).

**6.** Tex.Rev.Civ.Stat.Ann. art. 342–908 (Vernon 1973) provides:

fect, this means that both national and state banks are equally exempt from many forms of state taxation in Texas.

Although Texas achieved tax parity among state and national banks with this amendment, many other states had not totally or effectively remedied the disadvantageous tax position of their state-chartered banks.[7] The United States Congress accordingly reacted to this nationwide problem in 1969 with the passage of Pub.L. 91–156. The legislative history of that enactment reveals that the intended effect was to remove the prohibition against states "to levy modern types of taxes on national banks" to the same extent and in the same manner that they presently have the right to tax state-chartered banks. S.Rep.No. 91–530, 91st Cong., 1st Sess., *reprinted in* [1969] U. S. Code Cong. & Admin. News, pp. 1599, 1599, 1594–98. The Congress concluded that there was no longer any justification for continuing to grant national banks immunities from state taxa-

tion that were not enjoyed by state-chartered banks.[8]

Thus, the only institutions affected by Pub.L. 91–156 are "banks." Not one of the taxpayers in this case, however, can be characterized as a "bank."[9] A national bank holding company is a company which has control over a bank, but it is not chartered or statutorily empowered to transact banking business. 12 U.S.C.A. § 1841(a)(1) (1969 & Supp.1979); P. Heller, Handbook of Federal Bank Holding Company Law 1–52 (1976). A corporate holder of a bank certificate of deposit is clearly not a bank, but merely a creditor of the bank. *Southview Corp. v. Kleberg First National Bank,* 512 S.W.2d 817, 819 (Tex.Civ.App.—Corpus Christi 1974, no writ); 10 Am.Jur.2d *Banks* § 455 (1963).

This strict, but literal, construction of the pertinent statutes leads to only one reasonable conclusion. By passage of article 7, section 1, our legislature sought to address

---

State and national banks are hereby declared to be within the same class under the Constitution and laws of this state. It is not the intention of the Legislature to discriminate between state banks, national banks, and private banks. To the extent that the State of Texas has power to legislate with reference to national banks, all laws of this state shall apply alike to state banks, private banks, and national banks domiciled in this state; and state banks and private banks shall be subject to only such taxes heretofore or hereafter imposed by the state, or any political subdivision thereof, as could lawfully be imposed upon such state banks or private banks were they operating as national banks.

7. *See* Note 8, *infra.*

8. S.Rep.No. 91-530, 91st Cong. 1st Sess.; H.Rep.No. 91-728, 91st Cong., 1st Sess., reprinted in [1969] U. S. Code Cong. & Admin. News, p. 1595. The Senate Committee on Banking and Currency reported:

Some States have exempted State banks from liability for any States taxes which national banks are required to pay. There, the State may or may not have attempted to achieve equality between banks and other businesses by taxing banks at a higher rate on the allowable taxes than other businesses pay. This type of device is at best uncertain.

Regardless of the method employed by the particular State in an attempt to achieve equality, there is always a question of wheth-

er it has actually been achieved, be it equality between State and National banks, or equality between banks and other businesses.

There may have at one time been justification for giving national banks privileges and immunities which were denied State banks, under the theory that national banks are peculiarly an instrumentality of the Federal Government, and, as such, hold a unique and distinct position from that of other institutions. *Without specifically addressing the question of whether national banks remain, in substance, such a Federal instrumentality, the committee is agreed that there is no longer any justification for Congress continuing to grant national banks immunities from State taxation which are not afforded State banks.*

*Id.* at 1595 (emphasis added); *see Lake County National Bank v. Kosydar,* 305 N.E.2d 799, 802 (Ohio 1973); Mitchie on Banks and Banking 350 n. 11 (1971 & Supp.1979) (purpose of Pub.L. 91-156 is to remove immunity from state taxation).

9. A "bank" may be defined as an "*institution* organized under the laws of the United States . . . the District of Columbia, [or] any territory of the United States . . . which (1) accepts deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans." 12 U.S.C.A. § 1841 (c) (1969 & Supp.1979) (emphasis added).

**274**

the congressional effort to remove federal barriers to equal tax treatment of state and national banks. Texas, unlike some other states, had previously equalized taxation among state and national banks and the legislature doubtlessly intended to maintain this parity by precluding any additional taxation of those institutions. Stated differently, there is no reason for us to presume that the legislature sought to exempt national bank holding companies and corporate holders of national bank certificates of deposit from a franchise tax computed on income received from national banks located in this state.

■ Moreover, an exemption from taxation cannot be extended to a taxpayer merely because it is related to or connected with a tax-exempt corporation. In *Silco, Inc. v. Calvert*, 482 S.W.2d 56 (Tex.Civ.App. —Austin 1972, writ ref'd n. r. e.), the court was faced with a contention similar to the one advanced by the national bank holding companies in this case. The taxpayer, Silco, Inc., was a holding company comprised of four tax-exempt corporations, including one state bank and one state savings and loan. The comptroller assessed a franchise tax against Silco which was computed on the interest and dividends which Silco had received from its four subsidiary corporations. Silco filed suit to recover the tax paid, contending that its corporate components were exempt from franchise taxation and that logic and equity dictated that such extensions should be extended to Silco itself. The trial court held for the Comptroller and the court of civil appeals affirmed. The court stated that Silco was connected with its tax-exempt components through ownership, but held that the parent corporation and its components were separate legal entities. Silco could not bring itself within the exemption statute by the mere fact that its capital was invested in the stock or securities of a corporation exempted from the tax. *Id.* at 58. Likewise, we do not believe that national bank holding companies are entitled to an exemption merely because the legislature has continued the franchise tax exemption for the national banks.

■ We therefore hold that the comptroller correctly ruled that, under the location of payor rule, interest and dividends derived from national banks located in this state are includable in the corporate payee's Texas gross receipts for the purpose of assessing a franchise tax. To hold otherwise would mean that the Texas legislature intended to continue the unequal treatment between recipients of income from state banks and recipients of income from national banks. This we cannot accept. Rather, we believe that the legislature merely intended to preserve the status quo in reference to taxation of banks, both national and state, until it chose to impose additional taxation at a later time.

The judgment of the court of civil appeals is accordingly reversed and the judgment of the trial court is affirmed.