teleprofitsvsharp 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-93-312-CV





TELEPROFITS OF TEXAS, INC.,



 APPELLANT



vs.





JOHN SHARP, COMPTROLLER OF PUBLIC ACCOUNTS;


KAY BAILEY HUTCHISON, TREASURER OF THE STATE OF TEXAS; 


AND DAN MORALES, ATTORNEY GENERAL OF THE STATE OF TEXAS, 



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 92-12322, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 



 





 Appellant Teleprofits of Texas, Inc. ("Teleprofits"), sued John Sharp, Comptroller
of Public Accounts for the State of Texas, Kay Bailey Hutchison, Treasurer, and Dan Morales,
Attorney General of the State of Texas (collectively "the Comptroller"), for the return of sales tax
paid under protest. See Act of May 15, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen.
Laws 1492, 1512 (Tex. Tax Code Ann. ("Tax Code") §§ 112.052-.053, since amended). The
trial court rendered a take-nothing judgment from which Teleprofits appeals. We will affirm the
judgment of the trial court.



BACKGROUND


 Teleprofits is a regulated provider (1) of telecommunications services and has
provided coin-operated telephone services in the Houston area since 1988. As part of its business,
Teleprofits must buy access to a telephone network by purchasing customer-owned and coin-operated telephone ("COCOT") lines through the local exchange company. Teleprofits then sells
individual access to the telephone network from its payphones and collects the charges as revenue. 
Teleprofits does not sell its local exchange access to other regulated providers. 

 As a retailer, Teleprofits must pay sales tax on its coin revenues unless it qualifies
for an exemption. See Tax Code §§ 151.051-.052. Teleprofits charges twenty-five cents for each
local call and deducts the sales tax from its gross revenues. Believing that it qualifies for an
exemption, Teleprofits brought suit for the return of $75,450.35 in sales taxes it paid under
protest during 1992. See Tax Code § 112.052(a). The trial court rendered a take-nothing
judgment. Teleprofits now appeals. 


DISCUSSION


 In a single point of error, Teleprofits argues that the district court erred as a matter
of law in concluding that it was not exempt from paying sales tax under section 151.323(2) of the
Tax Code, which provides:



There are exempted from the taxes imposed by this chapter the receipts from the
sale, use, or other consumption in this state of:

 

 (2) access to a local exchange telephone company's
network by a regulated provider of
telecommunications services . . . .



Tax Code § 151.323(2).

 Teleprofits argues that the trial court misconstrued the statute when it concluded
that Teleprofits did not satisfy the criteria to qualify for a tax exemption under section 151.323(2)
of the Tax Code. The statute exempts (1) the sale, use, or other consumption of access to a local
network (2) by a regulated provider. Teleprofits argues that because it is a regulated provider,
the "sale of access" exemption applies to all of its business transactions, qualifying it for a tax
exemption both when it buys access to a local network and also when it sells that access to its
customers. We disagree.

 Statutory exemptions from taxation are subject to strict construction because they
place a greater burden on other tax-paying businesses and individuals. North Alamo Water Supply
Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991); Bullock v. National
Bancshares Corp., 584 S.W.2d 268, 271-72 (Tex. 1979); Hilltop Village, Inc. v. Kerrville Indep.
Sch. Dist., 426 S.W.2d 943, 948 (Tex. 1968). Accordingly, the claimant bears the burden of
showing that the organization falls within the statutory exemption. North Alamo Water Supply,
804 S.W.2d at 899; National Bancshares, 584 S.W.2d at 272. All doubts are resolved in favor
of the taxing authority. National Bancshares, 584 S.W.2d at 272. 

 We agree that Teleprofits has satisfied the statutory criteria when, as a regulated
provider, it purchases access from a local network. However, applying the rules of strict
construction to section 151.323(2), we do not agree that the statute allows Teleprofits an
exemption both when it purchases access to the local network and again when it sells that access
to its customers. Such an interpretation would exempt Teleprofits from paying sales tax
altogether. We read the "sale of access" provision to apply only to those transactions in which
the local exchange carrier provides access to the regulated provider, in this case, Teleprofits. 

 Teleprofits makes a series of arguments that rest on a central assertion that the
statutory exemption is clear and unambiguous. Teleprofits asserts that because the statute is clear
on its face, (1) this Court may not use extrinsic aids or rules of statutory construction to guide its
interpretation of the statute; (2) the Comptroller's interpretation of the statute abrogates its plain
meaning; and, (3) the trial court erred when it deferred to the Comptroller's erroneous
interpretation of the statute. 

 We reject appellant's argument that the statutory language creating this exemption
is so clear that this Court may not rely on standard rules of statutory construction to interpret its
meaning. "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." 2A Norman J. Singer, Sutherland Statutory
Construction § 45.02, at 6 (5th ed. 1992) [hereinafter Sutherland]. The Comptroller understands
this exemption to apply only to the original sale of access to a local exchange company's network
to a regulated provider. Teleprofits understands all subsequent sales of access by a regulated
provider to ultimate consumers to also be exempt from sales tax. We conclude that the language
of section 151.323 could reasonably be understood in these two conflicting senses and we must
rely on standard rules of statutory construction to determine whether to apply the exemption to
Teleprofits' receipts from payphone customers.

 The Code Construction Act expressly governs construction of the Tax Code. Tax
Code § 1.03; Southwest Airlines Co. v. Bullock, 784 S.W.2d 563, 567 (Tex. App.--Austin 1990,
no writ). The Code Construction Act provides that when construing a statute, courts may
consider among other things: (1) the object sought to be attained by the statute; (2) the
circumstances under which the statute was enacted; (3) legislative history; (4) common law or
former statutory provisions; (5) consequences of a particular construction; (6) administrative
construction of the statute; and (7) the title or caption, preamble, and emergency provisions. 
Code Construction Act, Tex. Gov't Code Ann. § 311.023 (West 1988) ("Code Construction
Act"); Townsend v. State, 846 S.W.2d 386, 387 (Tex. App.--Houston [14th Dist.] 1992, no pet.);
Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire, 824 S.W.2d 218, 221 (Tex. App.--Dallas 1991,
writ denied).

 We first consider the legislative history and purpose in promulgating this tax
exemption. Before the enactment of House Bill 1949 ("H.B. 1949"), the telecommunications
industry was taxed under the miscellaneous gross receipts tax originally enacted in 1907 and
amended with nonsubstantive revisions in 1981. See Act of May 9, 1985, 69th Leg., R.S., ch.
206, § 9, 1985 Tex. Gen. Laws 792, 793 (Tex. Tax Code Ann. § 151.323(3), since amended);
Act of May 31, 1981, 67th Leg., ch. 389, § 1, 1981, Tex. Gen. Laws 1490, 1787; House Comm.
on Ways and Means, Bill Analysis, Tex. H.B. 1949, 69th Leg., R.S. (1985) [hereinafter Bill
Analysis]; see also Senate Comm. on Finance, Committee Report, Tex. H.B. 1949, 69th Leg.,
R.S. (1985) ("Fiscal Notes"). Major changes within the telecommunications industry, including
the divestiture of AT&T, enormous technological advances, and the influx of new telephone
businesses, had rendered the 1907 tax impractical to administer. Bill Analysis at 1. Beginning
in 1983, the Comptroller's efforts to tax new telecommunications providers under the old gross
receipts tax precipitated a series of lawsuits that jeopardized nearly half of the projected revenues. 
Id. Further, the absence of an appropriate tax regime subjected some telephone companies to
double or multiple taxation, causing unfair competition within the industry. Id. A general
controversy developed over which companies were to be taxed, what services were taxable, and
how the taxes were to be paid. Id. H.B. 1949 attempted to resolve some of these controversies
and to implement a system of adequate and fair taxation in the telecommunications industry. (2) Id. 

 Interpreting section 151.323(2) to exempt Teleprofits from the gross receipts tax
and the sales tax allows Teleprofits to escape paying tax altogether. Such a result ignores the
legislature's overriding intent to impose a regime of equitable taxation, and violates the tenet that
courts must be guided by legislative intent when interpreting a statute. City of Sherman, 643
S.W.2d at 684; Southwestern Bell, 863 S.W.2d at 757. Affording Teleprofits favorable tax
treatment would also defeat the goal of promoting fair competition within the telecommunications
industry. When interpreting a statute, we presume that a just and reasonable result is intended. 
Code Construction Act § 311.021(4). By adopting Teleprofits' interpretation, we would
perpetuate the very problems H.B. 1949 was designed to cure. "Before the true meaning of a
statute can be determined where there is genuine uncertainty concerning its applications,
consideration must be given to the problem in society to which the legislature addresses itself." 
Sutherland § 45.02, at 7. Moreover, Teleprofits' analysis ignores the specific purpose of the
statutory exemption at issue. The section-by-section analysis of the amendments introduced by
H.B. 1949 explains that while the basic local exchange telephone service would also remain
subject to the gross receipts tax, the access charges paid by providers of telecommunications
service would be subject to the sales tax. See Bill Analysis at 2, § 8.

 The legislative explanation of the exemption created by section 151.323(2) is clear. 
First, the legislature meant to exempt local exchange carriers from paying sales tax on their sale
of local network access; they would instead remain subject to tax on their gross receipts. Under
this taxing scheme the local exchange carrier would be taxed only once. The bill analysis explains
that regulated providers also would be exempt from sales tax on their purchase of access from
local exchange carriers; the legislature reserved taxation until the regulated providers' sale of
access to the final consumer. In effect, the regulated provider also would be taxed only once. 
In sum, the exemption ensures that no telecommunications service provider will be subject to both
a gross receipts tax and a sales tax. Based on its legislative history and purpose, we conclude that
section 151.323(2) applies only to Teleprofits' original purchase of access and does not exempt
Teleprofits from paying sales tax on its consumer sales.

 We next consider the Comptroller's interpretation. The Code Construction Act
directs us to consider agency construction of the statute we are interpreting. Code Construction
Act § 311.023(5). "Construction of a statute by the administrative agency charged with its
enforcement is entitled to serious consideration, so long as the construction is reasonable and does
not contradict the plain language of the statute." Tarrant Appraisal Dist. v. Moore, 845 S.W.2d
820, 823 (Tex. 1993). Even without this statutory directive, Texas courts generally give weight
to an administrative agency's interpretation of a statute as long as that interpretation is reasonable. 
Id.; State v. Office of Pub. Util. Counsel, 849 S.W.2d 864, 868-69 (Tex. App.--Austin), judgment
vacated sub nom., Office of Pub. Util. Counsel v. Public Util. Comm'n, 866 S.W.2d 209 (Tex.
1993). At trial, the Comptroller presented a series of tax policy statements from the last six years
to support the consistency of its position that sales tax must be collected on the regulated
provider's sale of access to the final consumer.

 The Texas Administrative Code sets out tax exemptions for telecommunications
services purchased for the purpose of resale, not on the resale itself. 34 Tex. Admin. Code §
3.344(c) (1993). This administrative rule clearly states that sales tax must be collected from the
final consumer on the total charge for the provider's services and the original charge for access. 
Further, we note that rule 3.344 specifically makes Teleprofits' consumer sales taxable. Rule
3.344 states that sales tax is due on a "taxable service paid for by the insertion of coins or tokens
into a coin-operated telephone." 34 Tex. Admin. Code § 3.344(b)(7) (1993).

 In response, Teleprofits argues that the Comptroller's construction contradicts the
plain language of the statute. Teleprofits insists that the Comptroller incorrectly interpreted the
exemption to apply to "sales of access to regulated providers" when the statute discusses "sales
of access by regulated providers." Teleprofits alternatively argues that the Comptroller and the
trial court improperly construed the phrase "sales by regulated providers" to mean "purchases by
regulated providers." Teleprofits argues that the statute plainly reads that all "sales of access by
a regulated provider" are exempt. We disagree that the Comptroller's rules and policy statements
contradict the statute's language. 

 Indeed, the Comptroller's interpretation is reasonable and consistent with the statute
as written. The Comptroller interprets the phrase "by the regulated provider" to refer to "access"
and not to "sales." Under the doctrine of the last antecedent, a qualifying phrase is said to modify
the words or clause immediately preceding it and is not to be construed as extending to or
including others more remote. Stracener v. United Servs. Automobile Ass'n, 777 S.W.2d 378,
383 (Tex. 1989); City of Corsicana v. Willmann, 216 S.W.2d 175, 176 (Tex. 1949); Montanye
v. Transamerica Ins. Co., 638 S.W.2d 518, 521 (Tex. App.--Houston [1st Dist.] 1982, no writ). 
The agency has appropriately interpreted the phrase "by the regulated provider" to modify the
antecedent phrase immediately preceding it. We conclude that the statute as interpreted by the
agency is reasonable and consistent with expressions of legislative intent and furthers the
overriding legislative purpose.



CONCLUSION


 Having concluded that the district court did not err when it held that Teleprofits'
receipts from pay telephone customers do not qualify for a tax exemption under section 151.323(2)
of the Tax Code, we overrule Teleprofits' single point of error and affirm the judgment of the trial
court.



 

 Bea Ann Smith, Justice


Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: April 27, 1994

Publish
1. At trial, it was determined that Teleprofits is a regulated provider for the purposes
of section 151.323(2) of the Tax Code. Teleprofits does not dispute its status as a
regulated provider. Teleprofits is regulated by the Public Utility Commission. See 16
Tex. Admin. Code § 23.54 (1993).
2. The bill analysis specifies several purposes including: (1) ensuring equitable taxation
across the telecommunications industry; (2) eliminating the competition problems
resulting from multiple taxation; and, (3) shifting most telecommunications services into
the sales tax.